Slip Op. 15 - 69

## UNITED STATES COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| **FEDMET RESOURCES CORPORATION**, | |
| Plaintiff, | **Before: Timothy C. Stanceu, Chief Judge** |
| v. | **Court No. 14-00297** |
| **UNITED STATES**, | |
| Defendant. | |

## OPINION AND ORDER

[Granting in part, and denying in part, defendant's motion to dismiss and granting plaintiff's motion for judgment on the agency record]

Dated: June 26, 2015

*R. Will Planert*, *Donald B. Cameron*, and *Sarah S. Sprinkle*, Morris, Manning & Martin LLP, of Washington D.C., argued for plaintiff Fedmet Resources Corporation. With them on the brief were *Brady W. Mills*, *Julie C. Mendoza*, and *Mary S. Hodgins*.

*Amy M. Rubin*, Assistant Director, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, of Washington D.C., argued for defendant United States. With her on the brief were *Melissa M. Devine*, Trial Attorney, *Patricia M. McCarthy*, Assistant Director, *Jeanne E. Davidson*, Director, *Benjamin C. Mizer*, Acting Assistant Attorney General. Of counsel on the brief was *Paula S. Smith*, Senior Attorney, Office of the Assistant Chief Counsel, International Trade Litigation, U.S. Customs and Border Protection.

Stanceu, Chief Judge: Plaintiff Fedmet Resources Corporation ("Fedmet"), a U.S.

importer, contests decisions by U.S. Customs and Border Protection ("Customs" or "CBP")

requiring Fedmet to post 260.24% *ad valorem* single transaction bonds ("STBs") to obtain

release of Fedmet's imported merchandise. The merchandise at issue, magnesia carbon bricks

("MCBs") that Fedmet declared upon entry to be products of Vietnam, was the subject of three

consumption entries that Fedmet made at the port of Cleveland, Ohio in late 2014. The 260.24%

*ad valorem* duty rate upon which Customs based its bond requirement is the sum of the deposit

rates Customs applied to effectuate an antidumping duty order (236%) and a countervailing duty

order (24.24%) on imported MCBs from the People's Republic of China ("China").  After

commencing this action, Fedmet posted 260.24% single transaction bonds for two of the entries

at issue in this litigation, each of which was made on October 21, 2014.  In response, Customs

has released the merchandise on those entries into commerce.

Before the court is Fedmet's Motion for Partial Summary Judgment on the Agency

Record, in which Fedmet seeks a judgment declaring unlawful CBP's imposition of the 260.24%

bonding requirement on the third entry of merchandise, made on December 2, 2014, and

ordering Customs to allow the merchandise covered by that entry to be released without the

posting of security for antidumping or countervailing duties.  The court grants Fedmet's motion

but orders further proceedings concerning the form of relief that will be necessary and

appropriate with respect to this entry.

Also before the court is defendant's Motion to Dismiss two of the three counts in

Fedmet's complaint for lack of jurisdiction or failure to state a claim on which relief can be

granted.  The court grants defendant's motion in part and denies it in part.

## I. BACKGROUND

### A.  Proceedings before U.S. Customs and Border Protection

The three consumption entries at issue in this case were made at the port of Cleveland on

October 21, 2014 (Entry Nos. 336-3104829-0 and 336-3104919-9) and December 2, 2014 (Entry

No. 336-3105573-3).  Second Am. Compl. ¶¶ 21, 25, 27, ECF Nos. 45 (conf.), 46 (public)

("Second Am. Compl."); *Entry Documents for Entry No. 336-3104829-0*, Tab 3 in First Admin.

R., ECF No. 30-4 (conf.); *Entry Documents for Entry No. 336-3104919-9*, Tab 4 in First Admin.

R., ECF No. 30-5 (conf.).  With respect to the two October 21, 2014 entries, Customs issued to

Fedmet, on November 6, 2014, an "Entry/Rejection Notice" stating that "[t]he country of origin for magnesia carbon brick is believed to be China" and requiring for release the posting of a 260.24% single transaction bond for each entry. *Entry/Summary Rejection Sheet for Entry No. 336-3104829-0*, Tab 1 in First Admin. R., ECF No. 30-2 (conf.); *Entry/Summary Rejection Sheet for Entry No. 336-3104919-9*, Tab 2 in First Admin. R., ECF No. 30-3 (conf.). Fedmet filed with Customs, on November 12, 2014, a submission containing information by which Fedmet attempted to demonstrate that the merchandise on Entry Nos. 336-3104829-0 and 336-3104919-9 was manufactured by a producer in Vietnam that was unaffiliated with Fedmet and that had manufactured the MCBs in Vietnam to Fedmet's specifications. Second Am. Compl. ¶ 18; *Oct. 9, 2014 Letter to the Port of Chicago, Submitted to the Port of Cleveland*, Tab 17 to Supplemental Admin. R., ECF Nos. 47-4 to 47-11 (conf.). After Fedmet submitted the required single transaction bonds for these two entries (received by Customs on November 28, 2014), Customs released the merchandise into commerce. Second Am. Compl. ¶ 20; *Jan. 21, 2015 Decl. of Edward Wachovec*, *Supervisory Import Specialist at the Port of Cleveland* ¶ 2, Supplemental Admin. R., ECF. No. 47-1 ("*Wachovec Jan. 21, 2015 Decl.*")

On December 30, 2014, Customs issued an Entry/Rejection Notice for the December 2, 2014 entry, which informed Fedmet that the shipment would not be released unless Fedmet submitted a single transaction bond in an amount calculated at 260.24% of the entered value. *Entry/Summary Rejection Sheet for Entry No. 336-3105573-3*, Tab 15 to Supplemental Admin. R., ECF No. 47-2 (conf.) ("*Entry/Summary Rejection Sheet for Dec. 2 Entry*"). Fedmet has not submitted a 260.24% single transaction bond on the December 2, 2014 entry, and the merchandise covered by that entry has not been released.

### B.  Proceedings before the Court of International Trade

Plaintiff initiated this action by filing a summons and a complaint on November 12, 2014.

Summons, ECF No. 1; Compl., ECF No. 5.  Plaintiff, with leave of the court, filed a second

amended complaint on January 9, 2015, which the court deemed filed on January 15, 2015.

Second Am. Compl.  Defendant filed an answer to the second amended complaint on

January 23, 2015.  Answer, ECF No. 51.

Defendant filed its Motion to Dismiss Counts I and III of the second amended complaint

on January 23, 2015, to which plaintiff responded in opposition on February 3, 2015, and

defendant replied on March 4, 2015.  Def.'s Mot. to Dismiss Counts I & III of Pl.'s Second Am.

Compl., ECF Nos. 49 (conf.), 50 (public) ("Def.'s Mot. to Dismiss"); Def.'s Mem. in Supp. of its

Mot. to Dismiss Counts I & III of Pl.'s Second Am. Compl., ECF Nos. 49 (conf.), 50 (public)

("Def.'s Br. in Supp. of Mot. to Dismiss"); Pl. Fedmet Res. Corp.'s Opp'n to Def.'s Mot. to

Dismiss, ECF Nos. 52 (conf.), 54 (public) ("Pl.'s Opp'n"); Def.'s Reply in Supp. of Mot. to

Dismiss, ECF Nos. 59 (conf.), 60 (public) ("Def.'s Reply").

On February 3, 2015, plaintiff moved for judgment on the agency record pursuant to

USCIT Rule 56.1.  Mot. of Pl. Fedmet Res. Corp. for Partial J. upon the Agency R., ECF Nos. 55

(conf.), 56 (public); Mem. of Law in Supp. of Pl.'s Mot. for Partial J. upon the Agency R., ECF

Nos. 55 (conf.), 56 (public) ("Pl.'s Br.").  Defendant responded in opposition to this motion on

March 4, 2015 and plaintiff replied on March 24, 2015.  Def.'s Resp. in Opp'n to Pl.'s Mot. for

Partial J. upon the Admin. R., ECF Nos. 57 (conf.), 58 (public) ("Def.'s Opp'n"); Reply Br. of

Pl. Fedmet Res. Corp. in Supp. of its Mot. for Partial J. on the Agency R., ECF Nos. 64

(conf.), 65 (public) ("Pl.'s Reply").

On April 8, 2015, the court held an oral argument on both pending motions, ECF No. 67,

and on April 15, 2015, plaintiff filed a joint report stipulating as to certain facts related to the

bonds plaintiff obtained for the October 21, 2014 entries and informing the court of the

confidentiality of certain information on the record of this proceeding, Joint Status Report, ECF

No. 69 ("Joint Status Report").

## II. DISCUSSION

### A.  Jurisdiction and Standard of Review

The court exercises jurisdiction over this matter pursuant to the residual jurisdiction

provision of section 201 of the Customs Courts Act of 1980, 28 U.S.C. § 1581(i).[1] *See also*

28 U.S.C. § 2631(i) ("Any civil action of which the Court of International Trade has jurisdiction,

other than an action specified in subsections (a)-(h) of this section, may be commenced in the

court by any person adversely affected or aggrieved by agency action within the meaning of

section 702 of title 5."); 5 U.S.C. § 702 ("A person suffering legal wrong because of agency

action, or adversely affected or aggrieved by agency action within the meaning of a relevant

statute, is entitled to judicial review thereof.").

In exercising jurisdiction under 28 U.S.C. § 1581(i), the court is to review the matter as

provided in the Administrative Procedure Act ("APA"), 5 U.S.C. § 706.  *See* 28 U.S.C. § 2640(e)

("In any civil action not specified in this section, the Court of International Trade shall review

the matter as provided in section 706 of title 5.").  In accordance with 5 U.S.C. § 706, the court

must "hold unlawful and set aside agency action . . . found to be . . . arbitrary, capricious, an

---

[1] All statutory citations herein are to the 2012 version of the U.S. Code.  All citations
herein to the Code of Federal Regulations are to the 2014 version of the code.

abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A) (the

"arbitrary and capricious" standard of review).

B.  Defendant's Motion to Dismiss

1.  Defendant's Motion to Dismiss Count I of Fedmet's Second Amended Complaint

In Count I of its second amended complaint, Fedmet claims that the magnesia carbon

bricks on the October 21, 2014 entries were produced in, and are products of, Vietnam and that

CBP's requirement that Fedmet post 260.24% single transaction bonds on those entries based on

the AD and CVD orders, therefore, "is arbitrary, capricious, an abuse of discretion, or otherwise

not in accordance with law." Second Am. Compl. ¶ 25.

Noting that Fedmet has posted the single transaction bonds and obtained release of the

merchandise, defendant argues that any issue as to the bonding requirement on the two

October 21, 2014 entries is now moot and that the court therefore lacks jurisdiction under the

case and controversy requirement in Article III of the U.S. Constitution to adjudicate the claims

in Count I.  Def.'s Br. in Supp. of Mot. to Dismiss 3-4.  Further, defendant argues that the claims

of Count I are moot because "there is no longer any relief this Court can provide to redress any

injury Fedmet may purport to have suffered in purchasing the single transaction bonds."  *Id.* at 4.

In defendant's view, even if Fedmet could establish that the court has authority to order

cancellation of the bonds (a point defendant does not concede), such a remedy could not benefit

Fedmet because "cancelling the bonds would result only in cancelling the surety's liability under

the bond" and "would not effect a refund of any premium that Fedmet may have paid to the

surety for the bonds."  *Id.* at 5.  According to defendant, the posted security does not establish

injury-in-fact because "CPB accepted a bond from Fedmet and does not have in its possession

any cash from Fedmet to return."  Def.'s Reply 2.  Defendant submits that had Fedmet, with the

permission of Customs, posted cash deposits with Customs in lieu of the bonds, "Fedmet

theoretically might have demonstrated continuing harm that this court could remedy (*i.e.*, a

refund from CBP of the cash security)."  *Id*.

     The court agrees with defendant that the claims in Count I are now moot.  In the parties'

April 15, 2015 joint status report to the court, plaintiff stated that "Fedmet was not required to

post any cash or collateral with the surety as a condition of receiving the bonds it obtained on the

two Cleveland entries that have been admitted (Entry Nos. 336-3104829-0 and 336-3104919-9)."

Joint Status Report 1.  Plaintiff further stated that "[t]he premium on those bonds consisted of a

single, lump sum payment, and there are no outstanding premiums that remain to be paid on the

bonds."  *Id*.  From these facts, it follows that no relief the court could grant on the Count I claims

could actually benefit Fedmet.  These facts indicate that Fedmet would not receive from the

surety any refund of the lump sum premium payment were the court to order Customs to cancel

the two bonds, and plaintiff alleges nothing to the contrary.

     In opposing dismissal of the claims in Count I, plaintiff argues that each of the two bonds

at issue "is a three-way contract among the United States, Fedmet, and the surety."  Pl.'s

Opp'n 7.  Pointing to the language of the bond contract, plaintiff submits that Fedmet, as well as

the surety, has bound itself to the United States in the amount of the bonds and that "[i]t follows

that Fedmet, as a party to the bond, retains an interest in being able to challenge the lawfulness of

CBP's requirement to post the bond in this case and to seek its cancellation."  *Id*. (footnote

omitted).  This argument fails to convince the court of the existence of a live case or controversy.

Plaintiff is correct that Fedmet, as principal on the two bonds, is jointly and severally liable

under the bond contracts for any duties later determined to be owing on the two

October 21, 2014 entries up to the limit of liability of the bonds.  But as importer of record,

Fedmet is under the obligation to pay all such duties, without limit, regardless of the existence of

the two single transaction bonds and Fedmet's continuous bond.[2]  19 U.S.C. § 1484; 19 U.S.C.

§ 1505; 19 C.F.R. § 141.1(b) ("The liability for duties . . . constitutes a personal debt due from

the importer to the United States which can be discharged only by payment in full of all

duties . . . . Payment to a broker covering duties does not relieve the importer of liability if the

duties are not paid by the broker.").

  Plaintiff alleges as a continuing injury its inability to obtain future single transaction

bonds from the surety without the posting of significant collateral.  The April 15, 2015 joint

status report submitted by the parties states as follows:

> *Impact on future requests for bonds*. At the time it acquired the bonds for the
> admitted entries, Fedmet was informed by its surety that the surety would require
> collateral for any future single transaction bonds ("STBs") or bonds covering
> antidumping duties ("ADD") issued to Fedmet.

Joint Status Report 1-2.  This statement does not suffice to establish a case or controversy based

on a continuing injury-in-fact.  The refusal by one surety to issue future single transaction bonds

to Fedmet without significant collateral does not establish Fedmet's inability to obtain single

transaction bonds from other sureties, potentially under less onerous terms, so as to allow Fedmet

to continue importing MCBs.  Plaintiff concedes in the April 15, 2015 joint status report that

"Fedmet has not approached any other sureties to request a bond after receiving the bonds

covering these two entries."  *Id*. at 2.  Also, the court cannot presume that the surety that issued

the two single transaction bonds would issue additional single transaction bonds were the court

---

[2] Certain other obligations attendant to importation, specifically, the obligations to
redeliver merchandise upon pain of liquidated damages under a bond, also could exist (at least
theoretically) under the single transaction bonds, as well as under Fedmet's continuous bond,
albeit with a lower limit of liability.  Fedmet alleges no facts, and makes no argument, as to
redelivery, and the court declines to speculate so as to presume a case or controversy on such a
basis.

to order cancellation of the two existing bonds.  Such a ruling by the court, were it to be made in

the future, would address only the issue of whether the requiring of single transaction bonds for

the two entries was unlawful under the "arbitrary and capricious" standard of review, not the

issue of ultimate duty liability on the entries (which would depend upon an actual determination

of country of origin).  Awareness that Customs had raised an issue as to Fedmet's potential

antidumping and countervailing duty liability on the underlying entries might well cause the

surety to refuse to issue additional single transaction bonds regardless of the court's ruling.  In

this respect, plaintiff's argument that the claims in Count I are not moot rests on speculation

instead of facts upon which the court may exercise jurisdiction.  *See City News & Novelty, Inc. v.*

*City of Waukesha,* 531 U.S. 278, 283 (2001) ("[S]peculation standing alone, however, did not

shield the case from a mootness determination.").

> To summarize, Fedmet has not established facts from which the court could conclude that

the claims comprising Count I of the second amended complaint present a live case or

controversy.  The court will dismiss these claims as moot.

> 2.  Defendant's Motion to Dismiss Count III of Fedmet's Second Amended Complaint

> Defendant also moves for dismissal of Count III, in which Fedmet claims that Customs

unlawfully imposed a "final determination . . . that all entries of MCBs from Vietnam by Fedmet

will be required to be entered with STBs at the 260.24 percent rate applicable to imports of

MCBs from China."  Second Am. Compl. ¶ 29; Def.'s Br. in Supp. of Mot. to Dismiss 7-13.

Fedmet claims that "[t]his determination, which amounts to a standing order to treat future

entries by Fedmet as subject to the AD and CVD orders on MCBs from China, is *ultra vires* and

in excess of CBP's statutory jurisdiction, authority, or limitations."  *Id.*

Defendant moves to dismiss Count III on the ground that the decision complained of,

which defendant describes as a "User Defined Rule (UDR)," Def.'s Br. in Supp. of Mot. to

Dismiss 1, is not a "final agency action" as required for judicial review under the APA, *id.* at 7-8

(citing 5 U.S.C. § 704 (allowing judicial review of "final agency action for which there is no

other adequate remedy in a court.")).  According to defendant, the UDR is "a targeting tool

employed by CBP" and not a "final agency action on a particular entry or importation and it is

not a final decision on bonding." *Id.* at 9.  Defendant points out that the decision to require

additional security upon a particular entry of merchandise, such as a single transaction bond, is

delegated to the port director by regulation, *id.* (citing 19 C.F.R. § 113.13(d)), and the authority

to review and reject entries is also exercised by the port, *id.* (citing 19 C.F.R. §§ 141.62-141.64).

Defendant would have the court dismiss the claim in Count III on the ground that "[t]he

UDR . . . fails to take any action on any individual entry and has no effect on its own on the entry

or release of individual shipments." *Id.* at 10.

The court is not convinced by defendant's argument that Count III of the second amended

complaint must be dismissed.  The court has examined the UDR in question, which, along with

related record documentation, is on the record of this judicial proceeding.  *UDR 1057274*, Tab 13

to First Admin. R., ECF No. 30-14 ("*UDR Report*").  The UDR is specific to Fedmet and

identifies the class or kind of merchandise at issue in this litigation as well as the dates during

which the UDR is in effect (September 6, 2014 to September 30, 2015).  *Id.* at 1.  It contains a

paragraph under the title "Instructions to Officer," a title indicating that the UDR is intended as a

directive rather than as an advisory notice.  *Id.* at 3.  The language of the paragraph under this

title further supports an interpretation that the UDR is a directive by containing the words "STB

require before release" and by referencing "ADCVD duties," i.e., antidumping and

countervailing duties. *Id.* Even the name of the issuance ("User Defined *Rule*") is at odds with

an interpretation that the UDR is merely advisory. The record shows that the UDR was

generated by an entity within Customs known as the South Florida National Targeting and

Analysis Group ("NTAG") for nationwide application and that "UDRs promote a uniform

method for targeting merchandise and serve to avoid inconsistent treatment of imports by

individual ports." *Aff. of Mary Rivera* ¶ 7, ECF No. 30-15 (Dec. 1, 2014) ("*Rivera Aff.*").

Additionally, while defendant argues that the Customs regulations vest in the port

director the authority to require additional security, that argument does not negate the record

evidence that the UDR appears to direct all port directors in exercising that authority when

encountering imports of MCBs by Fedmet into any port in the United States. The record shows

that the UDR challenged in Count III has been applied consistently so as to require STBs when

that situation occurs, i.e., when the identified merchandise is imported by Fedmet, and that port

directors have consistently relied on the UDR as the primary basis for requiring additional

security. *Dec. 5, 2014 Decl. of Edward Wachovec*, *Supervisory Import Specialist at the Port of

Cleveland* ¶ 6, Admin. R., ECF.No. 30-1 ("Entry Nos. 336-310482-9 and 336-3104919-9 'hit' on

UDR 1057274. It is the port of Cleveland's practice to follow a UDR when making a decision

on a particular entry that meets the criteria set forth in the UDR."); *Wachovec Jan. 21, 2015

Decl.* ¶ 5 ("As with Entry Nos. 336-3104829-0 and 336-3104919-9, Entry No. 336-3105573-3

'hit' on UDR 1057274."); *Dec. 8, 2014 Decl. of Linda Golf, Assistant Port Dir. for Trade at the

Port of Chicago* ¶ 7, ECF No. 30-16 ("It is the port of Chicago's practice to follow a UDR when

making a decision on a particular entry that meets the criteria set forth in the UDR.").

After considering the plain meaning of the language of the UDR and the remainder of the

record, the court cannot agree with defendant that the UDR "has no effect on its own on the entry

or release of individual shipments."  Def.'s Br. in Supp. of Mot. to Dismiss 10.  The record

shows instead that the UDR was intended to, and does, have just such an effect.  Supporting this

conclusion is a May 1, 2012 Customs memorandum that the agency provided as guidance to the

ports concerning when to request single transaction bonds to address AD/CVD concerns and that

indicates that such bonds are to be required uniformly.  *Use of Single Transaction Bonds as*

*Additional Security for Antidumping & Countervailing Concerns*, Tab 20 to Supplemental

Admin. R., ECF No. 47-14, *available at* http://www.cbp.gov/trade/priority-issues/adcvd/bonds

(last visited June 23, 2015).  The memorandum states that "[e]ach import transaction will be

judged on its own merits," and that "[o]nly on a case-by-case basis will the STB be required."

*Id.*  The memorandum, however, concludes that "[a]ll of the ports will be made aware when one

port requests an STB to address possible placement of the revenue in jeopardy involving

AD/CVD so *that it will be required uniformly at each port*."  *Id.* (emphasis added).  Because

record evidence indicates that ports have uniformly followed the UDR in imposing a heightened

bonding requirement on Fedmet's importation of magnesium carbon bricks from Vietnam, the

UDR is properly considered "the 'consummation' of the agency's decisionmaking process"

according to which "'rights or obligations have been determined,' or from which 'legal

consequences will flow' . . . ."  *Bennett v. Spear*, 520 U.S. 154, 178 (1997) (citations omitted);

*see also Franklin v. Massachusetts*, 505 U.S. 788, 797 (1992) ("The core question is whether the

agency has completed its decisionmaking process, and whether the result of that process is one

that will directly affect the parties.").

        In summary, the administrative record indicates that the UDR is a decision by Customs

that a single transaction bond should be required for each entry by Fedmet of MCBs with a stated

origin of Vietnam.  The court lacks a basis upon which to dismiss the claim contained in

Count III of the second amended complaint.  As to that claim, the court denies defendant's

Motion to Dismiss.

C.  Plaintiff's Motion for Partial Judgment on the Agency Record

Section 623 of the Tariff Act of 1930 ("Tariff Act") provides authority under which

Customs may require "such bonds or other security" as it "may deem necessary for the

protection of the revenue" or to ensure compliance with the customs laws.  19 U.S.C. § 1623(a);

see 19 C.F.R. Part 113.  Plaintiff claims Customs exceeded its authority under Section 623 and

the aforementioned regulation, 19 C.F.R. § 113.13(d),[3] when it required a 260.24% bond as

security for antidumping and countervailing duty liability as a condition of release of the

magnesia carbon bricks on the December 2, 2014 entry (Entry No. 336-3105573-3).  According

to Fedmet, "CPB's authority to require bonds on import transactions is limited to instances in

which [CBP] reasonably determines that such bonds are necessary to protect the revenue and

ensure compliance with customs laws and regulations."  Pl.'s Br. 7.  In arguing that Customs

failed to make a reasonable determination that the single transaction bond was necessary for the

December 2 entry and instead acted arbitrarily and capriciously, plaintiff states that "the

administrative record filed by CBP discloses no evidence that Entry No. 336-3105573-3 is

actually of Chinese origin."  Id. (emphasis in original).  Fedmet adds that "CBP has made no

effort to determine the actual country of origin of the MCBs covered by Entry

---

[3] The cited regulation provides as follows:

Additional security.  Notwithstanding the provisions of this section or any other
provision of this chapter, if a port director or drawback office believes that
acceptance of a transaction secured by a continuous bond would place the revenue
in jeopardy or otherwise hamper the enforcement of Customs laws or regulations,
he shall require additional security.

19 C.F.R. § 113.13(d).

No. 336-3105573-3" and that CBP "has issued no requests for information or documentation

from Fedmet to support Fedmet's declaration that the goods originated in Vietnam" even though

"Fedmet has voluntarily provided CBP with extensive documentation regarding its Vietnamese

supplier and Fedmet's personal knowledge of that supplier's capabilities and operations." *Id.*

at 13.

Defendant concedes that Customs, in imposing the bond requirement, did not determine

the country of origin of the MCBs on the December 2, 2014 entry, or on any other of Fedmet's

entries.  In its brief opposing Fedmet's motion for judgment on the agency record, defendant

states as follows:

> CBP's decision to require a single transaction bond was not based upon an
> affirmative country of origin determination regarding Fedmet's MCBs; rather, it
> was based upon its belief that acceptance of the entry as filed would place the
> revenue at risk, given the ongoing criminal investigation being conducted by HSI
> [Homeland Security Investigations] and information received from HSI regarding
> the status of that investigation.[4]

Def.'s Opp'n 20 (footnote omitted).  Regarding the cited investigation, defendant states that

"[o]n September 2, 2014, the United States District Court for the Western District of New York

signed a search warrant for the home of Mark Mattar, President of Fedmet."  Def.'s Opp'n 2

(citation omitted).  Defendant also states that on the following day, the same court executed a

grand jury subpoena *duces tecum* to Fedmet, requesting that Fedmet appear with certain

specified documents, electronic records, or objects.  *Id.* at 3.

---

[4] Defendant explained elsewhere in its brief that the abbreviation "HSI" refers to
Homeland Security Investigations, a component of U.S. Immigration and Customs Enforcement
("ICE").  Def.'s Resp. in Opp'n to Pl.'s Mot. for Partial J. Upon the Admin. R. 3, ECF Nos. 57
(conf.), 58 (public) ("Def.'s Opp'n").  Referring to an affidavit by Customs official Mary Rivera,
defendant states that the investigation by HSI "involves allegations that Fedmet has been
declaring Chinese-origin MCBs, which are subject to antidumping and countervailing duty
orders, to be instead of Vietnamese origin."  *Id.* at 4 (citing *Aff. of Mary Rivera* ¶ 4, ECF
No. 30-26 (Dec. 10, 2014)).

1.  Review of the Decision to Require the 260.24% Single Transaction Bond under the APA
"Arbitrary and Capricious" Standard of Review

"The scope of review under the 'arbitrary and capricious' standard is narrow and a court

is not to substitute its judgment for that of the agency . . . ." *Motor Vehicle Mfrs. Ass'n of U.S.,*

*Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983) ("*Motor Vehicle Mfrs. Ass'n*").

"Nevertheless, the agency must examine the relevant data and articulate a satisfactory

explanation for its action including a 'rational connection between the facts found and the choice

made.'"  *Id.* (quoting *Burlington Truck Lines, Inc. v. United States*, 371 U.S. 156, 168 (1962)

("*Burlington Truck Lines*")).  When reviewing an agency's explanation, a court "must 'consider

whether the decision was based on a consideration of the relevant factors and whether there has

been a clear error of judgment.'"  *Id.* (quoting *Bowman Transp., Inc. v. Arkansas-Best Freight*

*System, Inc.*, 419 U.S. 281, 285 (1974); *Citizens to Preserve Overton Park v. Volpe*,

401 U.S. 402, 416 (1971)).

The December 30, 2014 Entry/Summary Rejection Sheet for the December 2, 2014 entry

stated that "[w]e have reason to believe the magnesia carbon bricks might be of Chinese origin

and covered by antidumping and countervailing duty orders A-570-954-000/236% and

C-570-955-000/24.24%."  *Entry/Summary Rejection Sheet for Dec. 2 Entry*.  It further stated that

"[y]our continuous bond is insufficient to secure the revenue and ensure compliance with

Customs laws and regulations" and that "pursuant to 19 C.F.R. § 113.13(d), we have determined

that additional security in the form of a single transaction bond in the amount of [260.24%] . . . is

required to safeguard the revenue."  *Id.*  The Entry/Summary Rejection Sheet concluded that

"[t]he merchandise will not be released until the single transaction bond is received."  *Id.*

The written explanation Customs provided for requiring an additional, single-entry bond

as a condition of release of the merchandise on the December 2 entry is, essentially, that the

additional bond is "required to safeguard the revenue," i.e., such antidumping and countervailing duty liability as is later determined upon liquidation of the entry, because of CBP's having "reason to believe the magnesia carbon bricks might be of Chinese origin." *Entry/Summary Rejection Sheet for Dec. 2 Entry.* Because the Entry/Summary Rejection Sheet does not identify CBP's "reason to believe the magnesia carbon bricks might be of Chinese origin," *id.*, the court cannot conclude that the document provides, in the words of *Motor Vehicle Mfrs. Ass'n*, 371 U.S. at 43, a "satisfactory explanation." Moreover, because a mere reference to a "reason to believe" does not qualify as a statement of fact, the agency's written explanation fails to identify a "'rational connection between the facts found and the choice made.'" *Id.* (citation omitted).

Nor is the court able to conclude from the record that Customs "examine[d] the relevant data." *Id.* The record shows that the Customs official who issued the December 30, 2014 Entry/Summary Rejection Sheet was aware of the aforementioned criminal investigation and the underlying allegation against Fedmet. *Entry/Summary Rejection Sheet for Dec. 2 Entry*; *Dec. 15, 2014 Aff. of Lisa Olsen, Senior Import Specialist at the Port of Cleveland* ¶ 2, Tab 12 of Admin. R, ECF No. 30-13. Nevertheless, the evidence upon which the investigation was initiated is not on the administrative record. Nor does the record contain any information relevant to the December 2 entry that may have been developed as a result of that investigation. No record information specific to the merchandise on the December 2 entry is available on the record to indicate Chinese origin. The record information specific to that merchandise, albeit limited, indicates a country of origin of Vietnam. *See Entry Documents for Entry No. 336-3105573-3* at 1-10, Tab 16 to the Supplemental Admin. R., ECF No. 47-3.

According to the record, the December 30, 2014 Entry/Summary Rejection Sheet was issued by Lisa M. Olsen, a Senior Import Specialist at the port of Cleveland. *Entry/Summary*

*Rejection Sheet for Dec. 2 Entry*.  In an affidavit executed on January 20, 2015, Ms. Olsen stated

that she informed Fedmet's broker that "Fedmet would likely have to provide an STB, as with

Entry Nos. 336-3104829-0 and 336-3104919-9," the two October 21, 2014 entries.

*Jan. 20, 2015 Aff. of Lisa Olsen* ¶ 3, Tab 19 to Supplemental Admin. R., ECF No. 47-13.  Her

affidavit offers no additional information that suffices to further explain or support the decision

to reject the December 2, 2014 entry.  In a separate affidavit executed on December 5, 2014,

before rejection of the December 2 entry, Ms. Olsen discussed the basis for rejecting the two

October 21, 2014 entries.  *Dec. 15, 2014 Aff. of Lisa Olsen* ¶ 2.  She stated that she had received

a telephone call on October 27, 2014 from a special agent of Homeland Security Investigations

("HSI"), a component of U.S. Immigration and Customs Enforcement ("ICE"), and that the

special agent had said that Fedmet "was under investigation for alleged transshipment of

Chinese-origin refractory bricks through Vietnam, and that the country of origin of magnesia

carbon bricks imported by Fedmet from Vietnam was believed to be China." *Id.*  Ms. Olsen

further stated that the special agent "called to my attention the User Defined Rule ("UDR") for

Fedmet . . . ." *Id.* at ¶ 3.  Ms. Olsen concluded her December 5, 2014 affidavit by stating that

"I was aware of the investigation of Fedmet prior to the October 27, 2014 call" from the special

agent. *Id.* at ¶ 5.  The record also contains an affidavit by Edward Wachovec, a Supervisory

Import Specialist at the port of Cleveland, stating that "[a]s with Entry Nos. 336-3104829-0

and 336-3104919-9, Entry No. 336-3105573-3 'hit' on UDR 1057274." *Wachovec*

*Jan. 21, 2015 Decl.* ¶ 5.  The court cannot conclude from Ms. Olsen's affidavits that Customs

possessed any information beyond the fact of, and the nature of, the investigation from which

Customs could have formed a belief that the country of origin of the MCBs on the December 2

entry "might be" China.  *See Entry/Summary Rejection Sheet for Dec. 2 Entry* at 1.  Instead, the

record suggests that Ms. Olsen issued the Entry/Summary Rejection Sheet based on the belief of

the ICE special agent that Fedmet's MCBs were from China.

The record information specific to the origin of the merchandise on the December 2 entry

included the statement of Vietnamese origin on the entry documentation, the bill of lading, and

the commercial invoice for the shipment. *Entry Documents for Entry No. 336-3105573-3*

at 1-10, Tab 16 to the Supplemental Admin. R., ECF No. 47-3 (conf.).  The bill of lading and the

invoice bear the name of the Vietnamese company that is described in Fedmet's

November 12, 2014 submission. *See Oct. 9, 2014 Letter to the Port of Chicago, Submitted to the*

*Port of Cleveland*, Tab 17 to Supplemental Admin. R., ECF Nos. 47-4 to 47-11 (conf.).  In that

submission, Fedmet attempted to demonstrate to Customs that the merchandise on Entry

Nos. 336-3104829-0 and 336-3104919-9 was manufactured by a producer in Vietnam that was

unaffiliated with Fedmet and that had manufactured the MCBs in Vietnam to Fedmet's

specifications.[5] *Second Am. Compl.* ¶ 18.

In summary, the court concludes that the decision to require a single transaction bond as a

condition of release of the December 2 entry was "arbitrary and capricious" within the meaning

of the APA, 5 U.S.C. § 702.  That decision was not supported by a satisfactory explanation, did

not rest upon "'a rational connection between the facts found and the choice made,'" and was not

---

[5] As defendant points out in response to plaintiff's Rule 56.1 motion, Def.'s Opp'n 32-33, the information in Fedmet's November 12, 2014 submission does not include or reference production records demonstrating or indicating that the particular merchandise on Entry No. 336-3105573-3 was manufactured by the Vietnamese producer indicated on the commercial invoice.  The information in that submission includes, *inter alia*, business registration information related to that producer, what is described as photographs from the producer's plant containing images of MCBs produced for Fedmet and the equipment used to produce the MCBs, and Fedmet's reports from inspections of the producer. *See Oct. 9, 2014 Letter to the Port of Chicago, Submitted to the Port of Cleveland*, Tab 17 to Supplemental Admin. R., ECF Nos. 47-4 to 47-11 (conf.).

made according to an examination of "the relevant data."  *Motor Vehicle Mfrs. Ass'n*, 463 U.S. at 43 (citation omitted).

Defendant raises various arguments as to why the court must sustain the decision to require the additional security for the December 2 entry.  None of these arguments convinces the court.

In rebutting plaintiff's argument that Customs failed to make an origin determination, defendant argues that the court should sustain CBP's decision because it was not necessary for Customs to determine that the goods on the December 2 entry were of Chinese origin before requiring the 260.24% single transaction bond.  Def.'s Opp'n 14.  But here, the court need not decide the question of whether Customs erred in failing to base its decision on an *actual* determination of country of origin.  Instead, the court must decide whether the decision Customs made under 19 U.S.C. § 1623(a)—that the single transaction bond was "necessary for the protection of the revenue"—is, on this administrative record, sustainable under the "arbitrary and capricious" standard of the APA.

At the same time, the issue of the country of origin of the merchandise on the December 2 entry clearly has relevance for this case.  Unless China ultimately is determined to be the country of origin of that specific merchandise, there is no revenue to be protected by means of a single transaction bond.  The risk to the revenue Customs perceived, therefore, can only have been the risk that the country of origin of that merchandise ultimately will be shown to be China.  Accordingly, it is also relevant to the question of whether the agency decision challenged in this case is "arbitrary and capricious" that the record reveals no attempt by Customs to verify, or even seek further information from Fedmet regarding, the statements in the entry documentation that the country of origin of that merchandise is Vietnam.

Defendant argues that 19 U.S.C. § 1623(a) and 19 C.F.R. § 113.13(d) "vest the port director with significant discretion to require additional security based upon his or her 'belief' that such action is necessary," Def.'s Opp'n 15, and that CBP "unquestionably had the authority" to require the bond in the circumstance presented by this case, *id*. at 14.  The regulation, 19 C.F.R. § 113.13(d), provides in pertinent part that "if a port director or drawback office believes that acceptance of a transaction secured by a continuous bond would place the revenue in jeopardy or otherwise hamper the enforcement of Customs laws or regulations, he shall require additional security."  Defendant argues that this regulation is entitled to "controlling weight."  *Id*. at 15 (citations omitted).

The regulation at issue must be construed according to the statute authorizing its promulgation.  The regulation is not correctly interpreted, or given "controlling weight," in a way that negates the obligation placed on Customs by Congress, which is to make a determination that the additional security it is considering requiring is "*necessary* for the protection of the revenue," 19 U.S.C. § 1623(a) (emphasis added), not merely "advisable" or "desirable" for the protection of the revenue.  Congress afforded considerable discretion in § 1623(a), but the authority granted thereunder is not boundless.  In requiring of Customs a decision that the contemplated security be "necessary," and in providing for any such decision to be subject to review under the APA, Congress placed limits on the agency's exercise of that statutory authority.

Defendant submits that CBP's decision relied upon "information received from HSI regarding the status of that investigation."  Def.'s Opp'n 20.  But as the court has observed, the administrative record filed by defendant does not demonstrate that Customs, as opposed to ICE, even possessed the information upon which the investigation was initiated or any information

that the investigation had produced.  The court, in considering plaintiff's claim, must "review the

whole record or those parts of it cited by a party . . . ."  5 U.S.C. § 706.  If, as defendant argues,

any "information" was "received from HSI regarding the status of that investigation," Def.'s

Br. 21, that would sustain the agency decision Fedmet challenges on arbitrary and capricious

grounds, the court cannot consider that information because it is absent from the record.

Defendant argues, further, that CBP reasonably believed the December 2 entry presented

a risk to the revenue, citing the fact that Fedmet was under investigation for transshipping

Chinese MCBs through Vietnam and that "the investigation had in fact progressed to the point

that a Federal judge had issued a search warrant," which according to defendant "means that the

judge had determined that there was 'probable cause' to believe that Mr. Mattar's home

contained evidence of a crime, (*i.e.*, documents that evidenced an ongoing criminal

transshipment scheme)."  Def.'s Opp'n 24 (citing U.S. Const. Amend. IV; Fed. R. Crim.

P. 41(c),(d)).  Defendant also asserts that "the existence of grand jury proceedings is *precisely*

the type of fact that would support CBP's requirements of single transaction bonds."  *Id.* at 29

(emphasis in original).  Customs, however, did not place on the administrative record

information indicating that the investigation had progressed to the point of grand jury

proceedings.  Instead, the record evidence that the investigation had included grand jury

proceedings was provided to the court in a submission by Fedmet.  *Search & Seizure Warrant &*

*Subpoena to Testify before Grand Jury* (Sept. 16, 2014), Attach. 3 to Mem. in Supp. of Pl.'s

Appl. for TRO & Mot. for Prelim. Inj. (Nov. 12, 2014), ECF No. 12 (conf.) ("Mot. for Prelim.

Inj.").  Additionally, even if Customs had placed on the record the fact of the grand jury

proceedings, that information would not save the decision from Fedmet's challenge on arbitrary

and capricious grounds.  The court still would have no means of considering the information by

which the search warrant was obtained or any evidence that the search warrant may have

produced.

Defendant adds that "the investigation is not necessarily limited to entries made prior to

September 2, 2014" (the date of issuance of the search warrant) and that "[t]here is no suggestion

that the investigation was based upon information that Fedmet was transshipping for only a

limited period of time, or that information gathered during the investigation would not relate to

or have no bearing on activities conducted after September 3, 2014."  Def.'s Opp'n 25.

Defendant argues, further, that "documents related to all of the entries for which CPB requested

a single transaction bond (including entry number 336-3105573-3 [the December 2 entry]) are

directly covered by the scope of the search warrant and subpoena."  *Id*.  Defendant adds that

"[i]n particular, documents covered under the search warrant and subpoena may reflect *where* the

MCBs in entry no. 336-3105573-3 were manufactured."  *Id*. at 26 (emphasis in original).

Because the record lacks any of the information that caused the investigation to be initiated, any

information by which the search warrant was obtained, and any information that the search

warrant may have produced, defendant's arguments rest entirely upon speculation, not on the

administrative record before the court.

Defendant next argues that it was not unreasonable that CBP was "acting upon

information and advice received from ICE/HSI regarding its investigation and its belief that the

goods are of Chinese origin" and that "[i]t is appropriate for CBP to accept the advice of, and

give significant weight to, information provided by an HSI investigator without being privy to

the specific information and documents in that investigator's possession."  *Id*. at 28.  Defendant

explains, in this regard, that in 2004 certain investigative functions then performed by the U.S.

Customs Service were transferred to ICE with the creation of the U.S. Department of Homeland

Security and that "CBP now relies on ICE and HSI to conduct these investigations and fulfill that

function, and it would not have information related to the investigation in its possession." *Id*.

Defendant adds that "there are significant restrictions on ICE's ability to share specific

information or documents with CBP," including prohibitions in Fed. R. Crim. P. 6(e) on the

disclosure of grand jury information and practical concerns including, *inter alia*, protecting the

integrity of the investigation. *Id*. at 28-29.

Defendant's arguments concerning restraints on disclosure of information fail to convince

the court, for several reasons.  First, the court's resolution of the issue raised by Fedmet's claim

does not involve, and will not affect, the ability of ICE to conduct an investigation.  With respect

to the December 2 entry, the court's responsibility is limited to adjudicating Fedmet's claim

challenging a bond requirement on that entry according to the APA "arbitrary and capricious"

standard.  Second, defendant would have the court presume that it was not possible for the

government to place before the court, in a judicial proceeding conducted on an agency record,

more than the minimal amount of information that Customs placed on the record in this case.

And third, regardless of whether or not the court could agree with that presumption (the validity

of which has not been demonstrated), the court still must conclude that the minimal information

on the record is insufficient to allow it to sustain the challenged agency decision, particularly in

light of the unsatisfactory explanation presented in the Entry/Summary Rejection Sheet for the

December 2 entry.  Concerning the factual basis for the ICE investigation, defendant appears to

admit that Customs did not have "information related to the investigation in its possession,"

Def.'s Opp'n 28, yet defendant seeks an adjudication of Fedmet's claim that necessarily would

rest on speculation that such information, were it on the record, would suffice to sustain the

Customs decision that a single transaction bond for the December 2 entry was "necessary for

protection of the revenue," 19 U.S.C. § 19 U.S.C. § 1623(a).  Under the APA, Fedmet has a

statutory right to contest the basis upon which CBP imposed the bond requirement on the

December 2 entry.  *See* 28 U.S.C. § 2640(e).  As the Supreme Court has instructed, "the agency

must examine the relevant data and articulate a satisfactory explanation for its action including a

'rational connection between the facts found and the choice made.'"  *Motor Vehicle Mfrs. Ass'n*,

463 U.S. at 43 (citation omitted).

Defendant submits that the Customs decision was further supported by the UDR, which

the National Targeting and Analysis Group ("NTAG") unit of CBP issued in cooperation with

the HSI investigation, and because UDRs "carry significant weight with the ports."  Def.'s

Opp'n 24.  This argument is unavailing.  As the record shows and defendant acknowledges, the

UDR was created upon the recommendation of an HSI special agent who was conducting the

investigation.  *See Rivera Aff.* ¶¶ 6, 9; Def.'s Opp'n 24.  The record fails to show that the UDR

was created based on factual information (other than the fact of the investigation and search

warrant) that Customs itself possessed, and included in the record, rather than upon the

recommendation of an investigator employed by a different government entity.

The court concludes that the administrative decision by Customs to require a 260.24%

single transaction bond as a condition for acceptance of Entry No. 336-3105573-3 cannot be

sustained under the "arbitrary and capricious" standard of review imposed by the APA.

Therefore, the judgment the court enters in this case will set the decision aside as unlawful.

### 2.  Plaintiff Has Not Established Its Need for, or Entitlement to, Injunctive Relief

As relief on its claim in Count II, plaintiff seeks an order that not only holds unlawful the

contested decision but also orders Customs "to admit the entry into the United States without the

posting of an STB or other security" for payment of antidumping and countervailing duties.  Pl.'s

Br. 18.  At oral argument, the court inquired of defendant whether, should the court set aside the

contested decision to require a 260.24% bond on Entry No. 336-3105573-3, Customs promptly

would release the merchandise.  Oral Arg. Tr. 66 (May 5, 2015), ECF No. 70 (conf.).  Because

defendant was unable to provide the court and plaintiff an answer at that time, the court cannot

determine whether the second form of requested relief will be necessary.  Additionally, plaintiff

has not, at this point, established its need for, or entitlement to, injunctive relief as plaintiff has

not made a showing that the factors for injunctive relief have been met.[6]  *See id.* at 20-21.

Accordingly, the court is ordering additional procedure concerning the form of remedy to be

granted upon the claim stated in Count II of the second amended complaint.

### III.  CONCLUSION AND ORDER

Upon consideration of defendant's Motion to Dismiss, plaintiff's Motion for Judgment

upon the Agency Record, the responses to these motions and all other papers and proceedings

had herein, and upon due deliberation, it is hereby

**ORDERED** that the claim in Count I of plaintiff's second amended complaint be, and
hereby is, dismissed as moot; it is further

**ORDERED** that plaintiff's Motion for Judgment on the Agency Record be, and hereby
is, granted to the extent that such motion seeks declaratory relief that the agency decision
challenged therein is unlawful; it is further

**ORDERED** that defendant's Motion to Dismiss the second amended complaint be, and
hereby is, denied as to Count III of the second amended complaint; and it is further

---

[6] That relief is in the form of an affirmative injunction and, accordingly, may be awarded
only upon a showing that the factors for a permanent injunction—(1) irreparable harm,
(2) inadequacy of the remedy at law, (3) balancing of the hardships, and (4) that the public
interest would not be disserved by a permanent injunction—have been met.  *See eBay Inc. v.
MercExchange, L.L.C.*, 547 U.S. 388 (2006).

     **ORDERED** that plaintiff will confer with defendant and submit, by July 17, 2015, an agreed-upon schedule for the adjudication of the remaining claim in this litigation, set forth in Count III of the Second Amended Complaint, and an agreed-upon procedure and schedule for the court's resolution of the issue of the form of remedy to be granted upon the claim stated in Count II of the second amended complaint.

<u>/s/Timothy C. Stanceu</u>
Timothy C. Stanceu
Chief Judge

Dated: June 26, 2015
     New York, NY